```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

JOSEPH DEBONO,                       :

                Plaintiff,           :    MEMORANDUM DECISION

        - against -                  :    05 Civ. 10333 (DC)

WASHINGTON MUTUAL BANK,              :

                Defendant.           :

- - - - - - - - - - - - - - - - - -x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/8/06
```

**APPEARANCES:**        JOSEPH DEBONO
                        Pro Se Plaintiff
                        345 South End Avenue
                        New York, NY  10280

                        JACKSON LEWIS LLP
                        Attorneys for Defendant
                            By:  Matthew H. Woodard, Esq.
                        One North Broadway, Suite 1502
                        White Plains, NY  10601

**CHIN, D.J.**

Pro se plaintiff Joseph DeBono, a former employee of defendant Washington Mutual Bank ("Washington Mutual"), brings the instant action alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Defendant asserts that plaintiff's claims should be settled in arbitration, as opposed to federal court, because plaintiff signed a binding arbitration agreement.  Accordingly, Washington Mutual moves to stay the instant action and to compel arbitration pursuant to Section 3 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq.  For the reasons that follow, the motion is granted.

**BACKGROUND**

Washington Mutual employed DeBono as a loan consultant from approximately August 11, 2003 to March 17, 2004.  (Hagin Affidavit ¶ 4).

As a condition of employment, plaintiff was required to complete and sign a binding arbitration agreement (the "Agreement").  (Hale Affidavit ¶ 5).  The conditions of employment were initially described in an offer letter and an addendum sent to plaintiff dated July 15, 2003.  (Id. ¶¶ 4-5, Ex. D).  The offer letter stated, in relevant part, that the offer of employment was contingent upon "[c]ompletion of Washington Mutual's Binding Arbitration Agreement (enclosed)."  (Id. ¶ 5, Ex. D).  In the next paragraph, the offer letter provided that "[i]f you [plaintiff] agree to the terms of this offer please indicate so by signing this letter and the Binding Arbitration Agreement."  (Id. ¶¶ 6-7, Ex. D).  The latter paragraph was in bold-face type, and was also included in the offer addendum.  (Id.).

On or about July 22, 2003, plaintiff signed the offer letter, the addendum, and the Agreement.[1]  (Id. ¶ 9, Ex. E; Hagin Affidavit ¶ 5, Ex. B).  The Agreement, which consists of three pages, provides that "[a]ny and all disputes that involve or

---

[1] In plaintiff's sur-reply, he includes an offer addendum dated August 1, 2003, and signed by him on August 11, 2003.  Plaintiff states that this is an updated addendum.  He also states that there is no updated offer letter or arbitration agreement.  Assuming that this is true, it nevertheless does not affect the analysis below.

- 2 -

relate in any way to [plaintiff's] employment (or termination of employment) with Washington Mutual shall be submitted to and resolved by final and binding arbitration."  (Hagin Affidavit ¶ 6, Ex. B at ¶ 1).  The Agreement covered civil claims involving plaintiff's employment with defendant "including, but not limited to, claims of employment discrimination or harassment on the basis of race . . . [and] color . . . (including, but not limited to, claims under Title VII of the Civil Rights Act of 1964. . .)."  (Id. ¶ 7, Ex. B at ¶ 3).

On December 9, 2005, after he was discharged by Washington Mutual, plaintiff filed this action under Title VII, alleging race discrimination, retaliation, and harassment.  (Id. ¶ 3, Ex. A).

This motion followed.

## DISCUSSION

Two issues are presented.  The first is whether the Agreement between plaintiff and defendant is valid and enforceable.  The second is whether plaintiff's claims are subject to arbitration.  I discuss the issues in turn.

**A.   The Validity and Enforceability of the Agreement**

    **1.   Applicable Law**

On a motion to compel arbitration, "any disputed issues of fact concerning the existence of a binding agreement to arbitrate are decided under the standard that applies to a motion for summary judgment."  Sands Bros. & Co., Ltd. v. Ettinger, No.

03 Civ. 7854 (DLC), 2004 WL 541846, at *3 (S.D.N.Y. March 19, 2004) (citing Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).

"An arbitration agreement's validity is a matter of state law." Sherr v. Dell, Inc., No. 05 CV 10097 (GBD), 2006 WL 2109436, at *2 (S.D.N.Y. July 27, 2006). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Id. (quoting Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002)).

Under New York law, "in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (quoting Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416 (1920)) (internal quotations omitted). Thus, in the absence of fraud, duress, or other wrongful act, parties are bound "by the contracts they sign whether or not the party has read the contract." Sinnett v. Friendly Ice Cream Corp., 319 F. Supp. 2d 439, 444 (S.D.N.Y. 2004) (citations omitted).

If a plaintiff "[does] not understand the form or [has] questions about the arbitration clause or the rules . . . the burden [is] upon him to have his concerns addressed before signing [the arbitration agreement]." Gold, 365 F.3d at 149.

- 4 -

The plaintiff is ultimately responsible for ensuring that he understands the document he is signing.  Id.

### 2. Application

Plaintiff's arguments primarily revolve around the existence of a valid arbitration agreement.  According to plaintiff, the Agreement is not valid because he received and signed only the third page of the three-page document.  (Plaintiff's Opposition to Motion to Compel Arbitration ("Pl. Opp.") at 1-11).[2]  In addition, plaintiff also argues that he was never told that the document he was signing was an arbitration agreement.  (Id. at 5-6).  Thus, the fact that he received an incomplete document -- coupled with the fact that he was never informed about the nature of the document he was signing -- rendered the Agreement invalid.

Even assuming that plaintiff's assertions are true, the Agreement is nevertheless binding and enforceable for the following reasons:

First, it is undisputed that plaintiff signed the Agreement.  Thus, even if he only received the last page, plaintiff is bound by the conditions of the Agreement once he

---

[2] I am skeptical about plaintiff's assertion that he received only the third page.  First, his assertion to that effect is equivocal.  See infra note 3.  Second, it is difficult to believe that he would have signed a patently incomplete document without requesting or having knowledge of the first two pages.  Third, Washington Mutual's file copies of the correspondence include a complete Agreement; it makes no sense that Washington Mutual would have sent only the third page.  Nevertheless, on this motion for summary judgment, I assume plaintiff received only the third page.

signed it.  Under New York law -- absent fraud, duress, or other wrongful act -- "a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them."  <u>Gold</u>, 365 F.3d at 149; <u>see also</u> <u>Sinnett</u>, 319 F. Supp. 2d at 444.  Plaintiff does not dispute that he signed the Agreement, nor does he allege fraud or duress.  If he had questions concerning the document, it was his responsibility to raise them prior to placing his signature on that document.  <u>See</u> <u>Gold</u>, 365 F.3d at 149.

Second, plaintiff was placed on notice -- at least three times -- that signing a binding arbitration agreement was a condition of employment.  When plaintiff was made an offer, he received an offer letter and an addendum, which both stated that he was required to sign a binding arbitration agreement as a condition of employment.  (Hale Affidavit ¶¶ 5-9, Ex. D).  In fact, this is mentioned twice in the offer letter alone.  For example, the offer letter states that as a condition of employment, plaintiff had to complete "Washington Mutual's Binding Arbitration Agreement," which the letter said was "enclosed."[3]  (<u>Id.</u> Ex. D).  In addition, the very next paragraph

---

[3]  Plaintiff argues that the offer letter does not indicate that the Agreement is enclosed.  (Plaintiff's Sur-reply ("Pl. Sur.") at 3.  According to plaintiff, "I do not remember receiving a three page BAA [binding arbitration agreement] in either letter.  The Offer Letter and Offer Addendum <u>do not</u> indicate that a BAA is enclosed.  (If there was one, it was only the one (1) page that I signed.)  What is represented is that a BAA must be signed as does the offer letter and addendum.  No where does it say that a BAA is enclosed."  (<u>Id.</u>) (emphasis in original).

(continued...)

-- which is in boldface type -- states that "[i]f [plaintiff] agree[s] to the terms of this offer please indicate so by signing this letter and the Binding Arbitration Agreement."  (<u>Id.</u>).  The offer addendum has this same language in bold as well.  Based on this evidence, a reasonable juror could only conclude that plaintiff was notified of his obligation to sign an arbitration agreement.

   Lastly, it is clear from the face of the third page of the Agreement that it is an agreement to arbitrate disputes; it is also clear that it is part of a longer document.  (<u>See</u> Hale Affidavit Ex. D).  Indeed, the last page begins with a series of numbered paragraphs beginning at number 13.  A reasonable person in plaintiff's position -- with an MBA from a top business school -- would know that there should have been paragraphs 1-12 before it.  Again, this is simply belaboring the point that under New York law, a plaintiff is responsible for knowing the contents of a document he signs.  <u>See</u> <u>Gold</u>, 365 F.3d at 149.

   In conclusion, a reasonable juror looking at these facts -- (1) plaintiff signed the Agreement; (2) he was notified at least three times that signing a binding arbitration agreement was a condition of employment; and (3) the last page of the Agreement appears to be part of a longer document requiring an

---

  [3](...continued)
   Plaintiff is mistaken.  After the offer letter stated that an offer of employment was contingent on "[c]ompletion of Washington Mutual's Binding Arbitration Agreement," it subsequently stated, in parentheses, that the Agreement was "enclosed."  (Hale Affidavit ¶ 5, Ex. D).

individual to arbitrate disputes -- could only conclude that plaintiff knew he had to sign an arbitration agreement, and that he consented to such an agreement when he signed it. Thus, even taking plaintiff's objections to be true, the Court holds that a reasonable juror could only conclude that the Agreement is binding and enforceable.

Plaintiff makes the alternative argument that even if there was an Agreement, it is unenforceable because it is unfair. (Id. at 11-12). According to plaintiff, an arbitration would be much more expensive than having his case heard in federal court. (Id. at 11). He also argues that he is procedurally disadvantaged because discovery is limited in an arbitration proceeding. (Id. at 12).

The merits of these objections are debatable. See, e.g., Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 280 (1995) (recognizing that arbitration is less expensive alternative to litigation). More importantly, the objections are irrelevant, even if true. See, e.g., Gilmer v.Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) (concluding that discovery available to plaintiff in arbitration was fair, even though it was less extensive than it would be in federal court); Martin v. SCI Management L.P., 296 F. Supp. 2d 462, 468-69 (S.D.N.Y. 2003) (holding that discovery available to plaintiff in arbitration was not so minimal as to deprive her of fair hearing for her claims).

Accordingly, I hold, as a matter of law, that the Agreement is valid and enforceable.

B.    **The Arbitrability of Plaintiff's Claims**

    1.    **Applicable Law**

The next inquiry is whether plaintiff's claims are covered by the Agreement.

There is a strong federal policy favoring arbitration. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25.

> Section 3 of the FAA provides:
>
> If any suit or proceeding be brought in any
> of the courts of the United States upon any
> issue referable to arbitration under an
> agreement in writing for such arbitration,
> the court in which such suit is pending, upon
> being satisfied that the issue involved in
> such suit or proceeding is referable to
> arbitration under such an agreement, shall on
> application of one of the parties stay the
> trial of the action until such arbitration
> has been had in accordance with the terms of
> the agreement, providing the applicant for
> the stay is not in default in proceeding with
> such arbitration.

9 U.S.C. § 3.  See Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75-76 (2d Cir. 1998) (citing Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987).  Title VII claims clearly are arbitrable, and an employee will be required to arbitrate Title VII claims if they fall within the scope of the agreement to arbitrate.  See Gold, 365 F.3d at 147-48 (2d Cir. 2004) (holding former employee's Title VII claims subject to compulsory

arbitration); <u>Desiderio v.Nat'l Ass'n of Secs. Dealers, Inc.</u>, 191 F.3d 198, 203-06 (2d Cir. 1999) (holding plaintiff's Title VII claims arbitrable and that Congress did not intend to preclude waiver of judicial remedies for Title VII claims); <u>Litaker v. Lehman Bros. Holdings, Inc.</u>, No. 97 CIV 1607 (DC), 1999 WL 619638, at *1-5 (S.D.N.Y. Aug. 16, 1999) (holding plaintiff's Title VII claims subject to arbitration).

   **2.   Application**

Here, plaintiff only asserts claims under Title VII, and hence his claims are subject to binding arbitration.  <u>See Gold</u>, 365 F.3d at 147-48; <u>Desiderio</u>, 191 F.3d 198, 203-06; <u>Litaker</u>, No. 97 CIV 1607 (DC), 1999 WL 619638, at *1-5.  The Agreement explicitly provides that it covers any civil claims involving employment discrimination.  Specifically, it provides that "[a]ny and all disputes that involve or relate in any way to [plaintiff's] employment (or termination of employment) with Washington Mutual shall be submitted to and resolved by final and binding arbitration."  (Hagin Affidavit ¶ 6, Ex. B at ¶ 1).  The Agreement also specifically refers to Title VII claims.  (<u>Id.</u> ¶ 7, Ex. B at ¶ 3).  In short, the Agreement covers the discrimination, retaliation, and harassment claims that plaintiff asserts in this action.

**CONCLUSION**

Accordingly, defendant's motion to stay the current action and to compel arbitration under Section 3 of the FAA is granted, except that instead of merely staying the action, I will

dismiss it, as there is no reason to keep the case pending. Plaintiff may re-file within thirty days after the arbitration is completed, if further relief from this Court is necessary. The Clerk of the Court will enter judgment dismissing the complaint, without costs or fees, and without prejudice to reinstatement within thirty days following completion of the arbitration proceedings if further relief in this Court is required.

     SO ORDERED.

Dated:    New York, New York
           December 8, 2006

                                              DENNY CHIN
                                        United States District Judge